## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GLORIA LEE, as Surviving Spouse   :
of ROGER EARL LEE, Deceased,   :
  :    CIVIL ACTION NO.
       Plaintiff,   :    1:10-CV-2150-SCJ
  :
       v.   :
  :
HUFFMASTER CRISIS RESPONSE,   :
LLC, and HUFFMASTER   :
MANAGEMENT, INC.,   :
  :
       Defendants.   :

## ORDER

This matter comes before the Court on the Defendants' Motion for Summary

Judgment [Doc. No. 50].[1]

---

[1]The Court recognizes that the Plaintiff has requested that the Court withhold ruling on the present summary judgment ruling until it heard the pending <u>Daubert</u> motion/Motion to Exclude the Testimony of Ralph Witherspoon filed by Defendants. The Court declines to grant said request. In the interest of judicial economy, the Court deems it proper to consider the summary judgment first. In ruling upon the summary judgment motion, the Court has considered the entire record, inclusive of the deposition testimony of Plaintiff's expert, Ralph Witherspoon, which is the subject of the Defendant's <u>Daubert</u> motion/Motion to Exclude Testimony. <u>Cf</u>. <u>United States v. Frazier</u>, 387 F.3d 1244, 1264 (11th Cir. 2004) ("a district court need not conduct a <u>Daubert</u> hearing in every case").

1

## I. Background

On February 18, 2010, the Plaintiff, as surviving spouse of Roger Earl Lee, filed a Complaint for negligence/wrongful death and misrepresentation/fraud against the above-named Defendants. The Complaint alleges that in February of 2008, Roger Earl Lee was shot and killed while waiting to make a delivery at a Clorox International Company facility, for which Defendants provided security services.[2]

The Complaint was originally filed in the State Court of Bacon County, Georgia.

On April 1, 2010, Defendants filed a Notice of Removal to the United States District Court for the Southern District of Georgia. On July 12, 2010, this case was transferred to the Northern District of Georgia, where Huffmaster Crisis, LLC's registered agent is located.

On December 16, 2010, the Defendants filed a Motion for Summary Judgment based upon the following grounds: (1) Defendant Huffmaster did not owe a duty to Mr. Lee; (2) even if Defendant Huffmaster was negligent, it cannot be liable for Mr. Lee's death; and (3) each of the Plaintiff's four claims fail.

---

[2]A review of the record shows that Huffmaster Crisis Response, LLC is a Michigan Corporation and Huffmaster Management is the parent corporation to Huffmaster Crisis Response, LLC. [Doc. 1, p. 2].

The record developed at the time of summary judgment, inclusive of the Statement of Material Facts and responsive pleadings, shows the following facts.[3]

At approximately 3:50 a.m., on February 22, 2008, Mr. Roger Earl Lee arrived at the Clorox Plant in Tampa, Florida to deliver a tractor-trailer load of bleach from another Clorox facility in Houston, Texas.

Mr. Lee owned the truck he was driving and had been hired as an

---

[3]The Court notes that the Plaintiff has filed a response to the Defendants' Statement of Material Facts in which the Plaintiff indicates that she lacks sufficient information to admit or deny as to certain paragraphs of the Defendants' Statement of Facts. In opposition pleading, the Defendants argue that Plaintiff's response is a failure to comply with LR 56.1(B)(2)(a)(4), NDGa, which indicates that such a response is not an acceptable response in the absence of compliance with Fed. R. Civ. P. 56 (f). (The Court notes that in 2010, the language of Fed. R. Civ. P. 56 (f) which the Local Rule refers to was moved to subsection (d) of Fed. R. Civ. P. 56.) See Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Subsection (d) provides for options when facts are unavailable to a non-movant. A review of the record shows the absence of a pleading from the Plaintiff showing that she has utilized the Federal Rule options for obtaining unavailable facts. The Court finds that in accordance with Local Rule 56.1, the Plaintiff's responses indicating a lack of information are not acceptable and accordingly, result in those facts (at issue) being deemed admitted, as reflected herein.

Defendants also note that in Plaintiff's Responses to Defendants' Statements of Material Facts, Plaintiff denies certain facts, without specific citations to evidence (including page or paragraph number) in accordance with Local Rule 56.1(B)(2)(a)(2). The Court finds in accordance with Local Rule 56.1 that those facts (responded to in general terms, without specific citation to the evidence) are deemed admitted, as reflected herein. See Garland v. Advanced Medical Fund, L.P. II, 86 F.Supp.2d 1195, 1200 (N.D.Ga., 2000) ("To dispute a statement of fact under Local Rule 56, a respondent must do more than simply write the word "Denied." Rather, the rule requires that the respondent specifically controvert the moving party's statement of facts or else those statements shall be deemed admitted. LR 56.1B(2). In other words, the respondent must provide specific facts, supported by something more than mere denials or allegations, showing that a genuine issue exists to be tried.").

independent contractor by National Freight, Inc. to transport the bleach to Tampa, Florida.

The Clorox facility stores and handles hazardous chemicals and is a "Critical Infrastructure Site" registered with the U.S. Department of Homeland Security ("DHS"). It is required to follow DHS procedures and protocol.

Defendants were hired by Clorox to protect the plant, with a specific focus on preventing a terrorist strike. Defendants prepared a Security Survey, which is referenced in the Plaintiff's Complaint, in order to comply with the post 9/11 terrorist threat to the plant. The Post Instructions provide that the primary function of security is to observe and report suspicious activity and to limit non-Clorox employees access to the plant.

Clorox has never allowed truck drivers or any non-employee to enter the plant except during normal business hours (between 6:00 a.m. and 10:30 p.m.) and pursuant to strict security procedures. Defendants' guards have been instructed to follow this policy.

When Mr. Lee arrived at the Tampa Clorox facility, Alberto Burgos, Defendants' employee, was the security guard on duty.

In his deposition, Mr. Burgos testified that Mr. Lee initially parked his truck several hundred feet from the guardhouse where Mr. Burgos was stationed. Once

parked, Mr. Lee walked to the front gate and guardhouse and provided Mr. Burgos with his shipping number and bill of lading, which listed 10:00 a.m. as his scheduled delivery time. Mr. Burgos checked the delivery logs and confirmed that Mr. Lee's scheduled delivery time was 10:00 a.m. Mr. Burgos told Mr. Lee that the Clorox facility was closed and would open at 6:30 a.m. and Mr. Burgos recommended Mr. Lee come back to the guardhouse when the plant opened. (The policy at the Clorox Tampa facility is to prohibit anyone from entering the facility unless the person seeking ingress is legitimately authorized to conduct business during set business hours.)

The Defendants have produced no record regarding Mr. Lee's arrival because Defendants' security guards generate log entries only when a delivery truck enters the property and makes a delivery. Mr. Lee never made a delivery on the night in question.

Further review of Mr. Burgos' deposition shows that when asked whether he gave Mr. Lee any indication where to park his truck, Mr. Burgos responded in the affirmative. When asked where he told Mr. Lee to park, Mr. Burgos responded: "[u]nderneath the bridge where it was well lit." Doc. 49-8 at p. 4, Burgos depo. at p. 43-44. When asked if Mr. Lee "did not comply with that directive," Mr. Burgos

responded: "correct."  Id.[4]

Mr. Lee knew that he could either wait in his truck outside the plant or drive to another location, such as a nearby truck stop, to wait for the plant to open. Plaintiff admits that it would have been possible for Mr. Lee to drive to a truck stop, but Mr. Lee did not do so.

A few minutes later, Mr. Burgos heard a single gunshot and immediately called 911.  At the same time, Mr. Burgos used his cell phone to call Bryant McCullen, the plant's maintenance coordinator, who was inside the plant.

Mr. Lee had been shot in the chest, yet managed to walk to the front gate of the plant near the guardhouse before collapsing.  Mr. Burgos instructed Mr. Lee to stay down.  Tampa Police and paramedics arrived on the scene, but were unable to revive Mr. Lee.

The Tampa Police Department investigated the incident and determined that Mr. Lee was robbed and murdered. The assailant is unknown.  When asked to describe the area, the Investigating Officer, Detective Houston, testified that in "that specific area within that block or so it's – we don't have that many robberies or murders or anything like that.  Outside of the area there's more crime, but as far as

---

[4]In Mr. Burgos' incident report, Mr. Burgos wrote: "I told [Mr. Lee] if he wanted to park under bridge he can he said that he would stay at side of building.  I said ok." Doc. 53-1 at p. 23.

robberies and all, since there's not that many people there in the morning, you're not going to have that many victims, so you're not going to have that many people there looking for victims." Doc. 50-16, Houston depo, at p. 9.

Prior to Mr. Lee's murder, no truck driver had ever been assaulted, shot, robbed, or harassed around the plant. Neither Huffmaster nor Clorox knew of any prior assaults or shootings in the area. Mr. Burgos testified that he has worked as a security guard at the plant for about a year and never witnessed any violent crimes in the area around the plant.

On the morning he was murdered, Mr. Lee was making his third trip to the plant in the past six moth. On his first visit, September 10, 2007, Mr. Lee picked up a load from the plant. On his second trip, December 31, 2007, Mr. Lee was delivering a load from the Houston, Texas Clorox facility. The delivery was identical to the one Mr. Lee was attempting to make the morning he was killed. For the December delivery, Mr. Lee arrived at the plant at 3:32 a.m. on the morning of December 31, 2007, less than two months before his murder. Mr. Lee waited until the plant opened, unloaded his truck and departed at 8:38 a.m. This prior early morning delivery provided Mr. Lee with knowledge of Clorox/Huffmaster's security policy and procedure.

On the morning he was killed, Mr. Lee knew that he would not be allowed to

enter the plant at 3:50 a.m., more than two hours before the plant opened and more than six hours before his scheduled 10:00 a.m. delivery time. Mr. Lee did not ask to enter the plant.

A related wrongful death action was filed by the Plaintiff against The Clorox International Co.[5] This case was filed in the United States District Court for the Southern District of Georgia. On September 30, 2010, Chief Judge Lisa Godbey Wood entered summary judgment in favor of Clorox finding that "Clorox had no duty to prevent the misconduct of third parties." Doc. 50-4, p. 12. Judge Wood further found: "Clorox...has shown that Plaintiff has no evidence to support the imposition of a duty in this case, and Plaintiff has failed to establish the existence of a dispute of material fact." Doc. 50-4, p. 24.

## II.  Motion for Summary Judgment

### A.      Legal Standard

Federal Rules of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law."[6]

---

[5]<u>Lee v. Clorox Int'l Co.</u>, No. CV-509-012 (S.D. Ga.).

[6]  On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson

---

improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, p. 14 (Sept. 2009). Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 782 n.4 (1st Cir. 2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." Murray v. Ingram, No. 3:10-CV-348-MEF, 2011 WL 671604, *2 (M.D. Ala. Feb. 3, 2011).

v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine [dispute] for trial." Id. (citations omitted).

### B. Applicable law

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." O'Neal v. Kennamer, 958 F.2d 1044, 1046 (11th Cir. 1992). This Court sits in the Northern District of Georgia. "[U]nder the Georgia conflicts-of-laws rule in tort cases, the law of the place where the tort was committed is the law by which liability is to be determined, i.e., the *lex loci delictis* determines the substantive rights of the parties." Maryland Cas. Ins. Co. v. Glomski, 210 Ga. App. 759, 760, 437 S.E.2d 616, 617 (1993). See also Simon v. Shearson Lehman Bros., Inc. 895 F.2d 1304, 1311 (11th Cir. 1990) ("in this diversity case, Georgia law requires us to apply the law of the state in which the tort occurred."). Here,

the tort is alleged to have been committed in Tampa, Florida. Accordingly, Florida negligence law applies in this case because the alleged tort occurred in Florida.[7]

## C. Analysis

As stated above, Defendant Huffmaster moves for summary judgment based upon the following grounds: (1) Defendant Huffmaster did not owe a duty to Mr. Lee; (2) even if Defendant Huffmaster was negligent, it cannot be liable for Mr. Lee's death; (3) each of the Plaintiff's four claims fail.

### (1) Duty

### (a) General – Foreseeable Zone of Risk

Under Florida law, a "claim of negligence requires the establishment of four elements in order for a claimant to prevail." Williams v. Davis, 974 So.2d 1052, 1056 (Fla. 2007).

> The claimant must first demonstrate that the defendant owed a 'duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.' Second, the claimant must establish that the defendant failed to conform to that duty. Third, there must be '[a] reasonably close

---

[7]The Defendants state in their brief that Florida law applies. The Court notes that, unlike Defendants, Plaintiff does not specifically state that Florida law applies. The Court notes that Plaintiff makes no specific objection to Defendants' use of Florida law and Plaintiff argues and cites Florida law in her pleadings.

causal connection between the [nonconforming] conduct and the resulting injury' to the claimant. Fourth, the claimant must demonstrate some actual harm. Id. (citations omitted).

See also Stone v. U.S., 373 F.3d 1129, 1130 (11th Cir. 2004) ("To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages.").

"[D]uty ordinarily arises from four general sources: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." Williams v. Davis, 974 So.2d 1052, 1056 (Fla. 2007).

In her Complaint, Plaintiff described Defendants' duty as follows: Defendants were obligated to keep reasonably safe all people making contracted deliveries to the Clorox facility. Doc. 1 at p.14.[8] In response to the Defendants' motion for summary judgment, Plaintiff states that Defendants owed Mr. Lee "a duty of reasonable care either to lessen the risk or to see that sufficient precautions were taken to protect against the harm that the risk poses." Doc. 53 at p. 11. Plaintiff states that the risk is "of criminal

---

[8]Plaintiff alleges that Defendants breached this duty by (a) instructing Mr. Lee to wait in an unsafe area, (b) neglecting to follow its own procedures regarding surveying, patrolling, and reporting, (c) failing to inform its employees of the dangerous nature of the neighborhood in which they would work. Doc. 1 at p. 14.

activity in the area." Doc. 53 at p.8.

It appears that Plaintiff's argued duty falls within general source number four stated above, a duty arising from the general facts of the case. <u>Williams</u>, 974 So.2d at 1056.

The Court must determine if the allegations and record thus far, are sufficient to show that Defendants have met their burden of showing there is no genuine dispute as to material fact regarding the element of duty. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 609 n. 9 (11th Cir. 1991) (directing district courts to "begin their inquiries on a motion for summary judgment by asking whether the moving party has met its burden") and Fed. R. Civ. P. 56(a).

"[T]he determination of the existence of a common law duty flowing from the general facts of the case under [Florida's] negligence law depends upon an evaluation of the concept of foreseeability of harm. [The Florida Supreme Court] [has] held that where a person's conduct is such that it creates a 'foreseeable zone of risk' posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure that the underlying threatening conduct is carried out reasonably." <u>Williams v. Davis</u>, 974 So.2d 1052, 1056 (Fla. 2007). <u>See</u> <u>also</u> <u>McCain v. Florida Power Corp.</u>, 593 So.2d 500, 502 (Fla. 1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to

others.").

"Duty, however, is not limitless. To impose a duty, it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk before liability may be imposed." <u>Demelus v. King Motor Co. of Fort Lauderdale</u>, 24 So.3d 759, 761 (Fla. Dist. Ct. App. 2009).

In addition, "in applying the 'foreseeable zone of risk' test to determine the existence of a legal duty, the [Florida] [S]upreme [C]ourt has focused on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff. This aspect of foreseeability requires a court to evaluate whether the *type* of negligent act involved in a particular case has so frequently previously resulted in the *same type* of injury or harm that 'in the field of human experience' the same *type* of result may be expected again." <u>Biglen v. Florida Power & Light Co.</u>, 910 So.2d 405, 409 (Fla. Dist. Ct. App. 2005) (emphasis in original). <u>See</u> <u>also</u> <u>DaimlerChrysler Ins. Co. v. Arrigo Enters., Inc.</u>, No. 4D10–509, 2011 WL 1878009, at *5 (Fla. Dist. Ct. App. 2011). <u>See</u> <u>also</u> <u>Webb v. Glades Elec. Co-op., Inc.</u>, 521 So.2d 258, 259 -260 (Fla. Dist. Ct. App. 1988) ("The foreseeability of an injury is a prerequisite to the imposition of a duty upon a defendant. A foreseeable consequence is one which a prudent man would anticipate likely to result from an act. '[I]t is not necessary that the exact nature and extent of the injury, or the precise manner of its occurrence, be foreseen; rather, it is essential only that some injury occur in a generally foreseeable

manner as a likely result of the negligent conduct.'") (citations omitted).

"Where a defendant's conduct creates a *foreseeable zone of risk,* the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Demelus v. King Motor Co. of Fort Lauderdale, 24 So.3d 759, 761 (Fla. Dist. Ct. App. 2009) (emphasis in original, citations omitted). "The duty foreseeability issue is a legal question and thus is to be determined by the court...." Smith v. Florida Power and Light Co., 857 So.2d 224, 230 (Fla. Dist. Ct. App. 2003).

In applying the above-referenced authority concerning the duty element of negligence, the Court must first determine the conduct at issue. According to the Plaintiff, the alleged negligent conduct involves the Defendants requiring truck drivers, such as Mr. Lee to await their delivery times outside of the plant's secure parking area without providing any warnings or guidance as to the severe risk of crime in the area. Doc. 53 at p. 11.

The Court must next determine, as a matter of law, if this conduct by Defendants created (or controlled) a foreseeable zone of risk posing a general threat of harm to others. Demelus, 24 So.3d at 761 ("To impose a duty, it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk before liability may be imposed."). Aguila v.

Hilton, Inc., 878 So.2d 392, 397 (Fla. Dist. Ct. App. 2004) ("the foreseeable risk must be one that comes into being as a result of the defendant's act or omission.").

In order to make this determination, the Court must define the risk at issue. Plaintiff indicates that the risk is of criminal activity in the area. Doc. 53 at p. 8. The Court finds persuasive and adopts the language of Judge Woods' order in the related case filed by the Plaintiff against Clorox, in which Judge Wood defines the relevant foreseeable risk of harm as being the victim of a crime near the Clorox facility. Doc. 50-4 at p. 9, 10.

Defendants state that they did not create the "zone of risk" because they did not create conditions which led to the attack on Mr. Lee. Id. at 15. Defendants argue that the conditions which led to Mr. Lee's murder were beyond their control. Id. Defendants argue that Mr. Lee controlled the conditions which led to the attack. Doc. 50-2 at p. 16.

In response, Plaintiff focuses on the conditions which likely contributed to Mr. Lee's death. Plaintiff acknowledges that Defendants did not create one of the conditions, i.e., the high crime rate surrounding the plant. Plaintiff states that the other contributing conditions created by Defendants were: Mr. Lee being denied access to the plant's secure parking area; Mr. Lee not being advised of the significant risk of assaultive crime in the area which was known by Defendants; and Mr. Lee not

being provided with an alternate protected area to await entry into the plant.   Doc. 53 at p. 9.

The Court is unable to uphold the Plaintiff's argument as the Court finds that the Defendants have met their burden of showing that they did not create or control the foreseeable risk.  The record shows that there is an absence of evidence showing that the Defendants were active participants in the criminal act.  The evidence also does not show that the Defendants supplied the gun which caused Mr. Lee's death. There is also an absence of evidence which shows that the high rate of crime near the plant was because of the truck entrance policy.  There is also an absence of evidence showing that the Defendants controlled access to the public street on which Mr. Lee was murdered.

The Court finds that the Plaintiff has not come forward with evidence showing a genuine dispute exists for trial.  The Court finds persuasive and adopts Judge Woods' citation of authority and finding that the relevant foreseeable risk of harm in this case comes from the high crime rate in the vicinity of the Clorox facility, not the truck entrance policy.  Doc. 50-4 at p. 9.[9]

The Court also notes that in accordance with the guidance of <u>Biglen</u> case, set out above, in applying the foreeseable zone of risk test, this Court is required to

---

[9]The Plaintiff's duty to warn arguments will be addressed *infra*.

evaluate whether the type of negligent act involved in this particular case has so frequently previously resulted in the same type of injury or harm that in the field of human experience the same type of result can be expected again. 910 So.2d at 409 ("[I]n applying the 'foreseeable zone of risk' test to determine the existence of a legal duty, the [Florida] [S]upreme [C]ourt has focused on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff. This aspect of foreseeability requires a court to evaluate whether the *type* of negligent act involved in a particular case has so frequently previously resulted in the *same type* of injury or harm that 'in the field of human experience' the same *type* of result may be expected again."). (emphasis in original).

As stated above, the alleged negligent conduct at issue here is requiring truck drivers, such as Mr. Lee to await their delivery times outside of the plant's secure parking area without providing any warnings or guidance as to the severe risk of crime in the area.

A review of the record shows that when asked to describe the area, the officer investigating Mr. Lee's death, Detective Houston, testified that in "that specific area within that block or so it's – we don't have that many robberies or murders or anything like that. Outside of the area there's more crime, but as far as robberies and all, since there's not that many people there in the morning, you're not going to have

that many victims, so you're not going to have that many people there looking for victims."  Doc. 50-16, Houston depo, at p. 9.

The record further shows that prior to Mr. Lee's murder, no truck driver had ever been assaulted, shot, robbed, or harassed around the plant.  Neither Huffmaster nor Clorox knew of any prior assaults or shootings in the area.  Mr. Burgos testified that he has worked as a security guard at the plant for about a year and never witnessed any violent crimes in the area around the plant.

In the Court's evaluation, there is an absence of evidence showing that the type of negligent act, alleged in this case, has so frequently previously resulted in the same type of injury or harm that in the field of human experience, the same type of result can be expected again so as to meet Florida's foreseeable zone of risk duty standard.[10]

It is important to note that the Court recognizes the Plaintiff's arguments on pages 12 and 13 of her responsive brief in which she argues that Florida law does not require foreseeability of a specific or particular injury as to the duty element of negligence.  The Court agrees that Florida law does not require such.  See Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441, 443 (Fla. 1961) ("The test was not intended

---

[10]  The Court notes that it has searched applicable authority and has been unable to find a case which is completely analogous with the case sub judice.  The Court also recognizes that the Florida courts have held that "[t]he statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care."  Henderson v. Bowden, 737 So.2d 532, 535 - 536 (Fla. 1999).

to, nor do we think it does, imply that a plaintiff, in order to recover in a negligence action, must prove that the *particular* causative act had frequently occurred before, and that it had frequently resulted in the same *particular* injury to the plaintiff."). The Court's rulings above are based on "types" of acts, injury, and harm, not specifics or particularities.

In addition, in making this evaluation, the Court recognizes Plaintiff's pleadings that reference the Defendants' Security Survey Executive Summary in which vulnerabilities of the plant were assessed. Doc. 53 at p. 4. The Plaintiff quotes the following language from Defendants' report: "There is a significant risk of [general violence from indigents] based on neighborhood observations." Id. The Plaintiff also notes that with respect to parking at the plant, "the security summary states that management had concerns about employees having to park across the street 'due to neighborhood safety issues.'" Id. The Plaintiff also referenced a Crimecast Map obtained by the Defendants in which the "projected risk of 'Crimes Against Persons' (CAP) in the area of the Plant was nearly six and a half times the national average as of December 21, 2001." Id. Plaintiff also referenced deposition testimony of Defendants' and Clorox's employees, who testified that the plant was located in a "bad" or "high crime" neighborhood." Id.

The Plaintiff argues that "[g]iven the highly elevated crime rate in the

surrounding neighborhood" which was known to the Defendants and "the fact that the Defendant actually foresaw a risk of violent crime in the area against plant employees," Plaintiff should not be required to establish foreseeability with respect to the targeting of truck drivers.   Doc. 53 at p. 13.   The Court is unable to uphold the Plaintiff's argument in accordance with the language of the <u>Biglen</u> case, which requires the Court to evaluate the "type" of negligent act alleged, along with frequency and resulting "same type of injury or harm."   910 So.2d at 409.   Here, while the Plaintiff has pointed to facts showing a "bad" or "high crime" neighborhood surrounds the plant,  Plaintiff has not shown frequency as to the "same type of injury or harm."   <u>Id.</u>   The Court also agrees with the Defendants argument and citation of authority (<u>Daly v. Denny's Inc.</u>, 694 So.2d 775 (Fla. Dist. Ct. App. 1997), which indicates that knowledge of prior crimes, *alone*, does not create a duty on the part of the defendant.[11]

---

[11]In <u>Daly</u>, the plaintiff was assaulted by two unknown assailants who had previously been loitering in a motel parking lot which was adjacent to a restaurant that plaintiff had just left.  The plaintiff sued the restaurant and motel on grounds of negligence.  The plaintiff alleged that there had been numerous prior armed robberies, assaults, and other criminal acts committed on the motel property, resulting in the hiring of a security guard (whose shift did not begin until after the time plaintiff was assaulted).  The plaintiff also alleged that the motel property was not properly lighted.  The motel filed a motion to dismiss, arguing that it had no duty to protect the plaintiff because the criminal tortious act was committed by a third party and the plaintiff never entered onto the motel property.  The court held that since the motel did not own the weapon that injured the plaintiff, the tortious incident did not take place on the motel property, and the motel had no connection to the tortfeasor, the common law duty to prevent the misconduct of third persons did not apply.  The court also conducted a

The Court finds that the Defendants have met their burden of showing that as to the issue of negligence, there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. The Court specifically finds that the Defendants have shown that there is an absence of evidence to support the duty element of the Plaintiff's negligence case. The Court finds that the Plaintiff has not met her burden of coming forward with specific facts showing a genuine dispute.[12]

**(b) Acts of third party**

Defendants further state that they had no duty to protect against third party misconduct. Doc. 50-2, p. 20. Defendants state that no special relationship existed between Defendants and Mr. Lee.

Defendants state that they did not create and could not control the risk that Mr. Lee would be murdered. Defendants further state that they could not: control the criminal who killed Mr. Lee; control access to the public street where he was killed;,

---

"zone of risk" duty analysis and held that the motel did not create the conditions that led to the criminal conduct and declined to extend landowner liability this far. The Court recognizes that the Plaintiff attempts to distinguish the <u>Daly</u> case on the grounds of constructive control and entrance onto the property; however, the Court finds the holding of the <u>Daly</u> still provides guidance in regard to a defendant's knowledge of prior crimes.

[12]The Court recognizes that the parties have alleged contributory negligence (on the part of Mr. Lee) arguments throughout the pleadings. The Court is unable to conclude that the allegations of contributory negligence create a genuine issue of material fact so as to preclude summary judgment on either of the grounds.

nor could Defendants control Mr. Lee himself.  Doc. 56 at p. 7.

"As a general principle, a party has no legal duty to control the conduct of a third person to prevent that person from causing harm to another. This principle is well accepted in the law .... There are exceptions to this rule .... A duty to protect an unknown plaintiff from the conduct of a third party may arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm; (2) the premises upon which the tort is committed; or (3) the person who committed the tort." <u>Aguila v. Hilton, Inc.</u>, 878 So.2d 392, 398 (Fla. Dist. Ct. App. 2004) (citations omitted).

In applying the above-stated rule and exception, the Court notes that there is no evidence to show that the Defendants were in actual or constructive control of the instrumentality of the harm or the person who committed the crime.   There is also no evidence which shows that Defendants were in control of the public street/premises upon which the crime was committed.

In regard to the premises, the Plaintiff argues that "even though the tort occurred outside of the Plant, the Defendants still had, at least, constructive control over the security of the area."  Doc. 53 at p. 10.  Plaintiff also states that Defendants had actual control over whether Mr. Lee would be allowed inside the plant on the date in question.  Doc. 53 at p. 18.  Plaintiff further states that Defendants had at least

23

constructive control over whether Mr. Lee would remain on the street in the location he was murdered.  Doc. 53 at p.18.

The Court is unable to uphold the Plaintiff's argument as the applicable authority, indicates that the Court looks to whether the defendant had control over the premises where the tort occurred, here, that is the public street.  There is an absence of evidence showing that Defendants had actual or constructive control over the public street.

### (c) Special relationships and duty to warn

"When [Florida courts have] recognized a duty to take precautions against the criminal acts of third parties, it has required the existence of a 'special relationship.'" K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So.2d 1114,

1118 (Fla. Dist. Ct. App. 2005).

Plaintiff states that the special relationships recognized by Florida courts are not limited to those listed by the Defendants (i.e., parent-child, master servant, landowner-licensee, and those with dangerous propensities) and the list of recognized special relationships continues to evolve.  Doc. 50-2, p. 21 and Doc. 53 at p. 17.   Plaintiff further states that of the relationships currently recognized by Florida law, the relationship between Defendants and Mr. Lee could properly be placed in

the landowner-invitee category of special relationships.  Doc. 53 at p. 17.[13]

"Florida courts have traditionally defined members of each category in the following manner ... an invitee is one 'who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises.'" Post v. Lunney, 261 So.2d 146, 147 -148 (Fla. 1972).  "[W]here the visitor is an invitee, he must keep his property reasonably safe and protect the visitor from dangers of which he is, or should be aware."  Id.

In the case sub judice, in response to the Plaintiff's argument, Defendants state that Clorox, not Defendants (as an independent contractor), has ultimate responsibility for its plant and Clorox has been adjudicated non-liable as a matter of law.[14]  The Defendants cite the following case in support of its argument:  U.S. Sec. Servs. Corp. v. Ramada Inn, Inc., 665 So.2d 268, 270 (Fla. Dist. Ct. App. 1995) ("[T]he law has always permitted a person to hire an employee or an independent contractor to perform a non-delegable duty owed by that person to third parties [i.e. the duty of a landowner to invitees to maintain its premises in a reasonably safe condition]; *the*

---

[13]Plaintiff recognizes in her brief that Mr. Lee was never allowed inside the gated facility on the date in question, but states that Mr. Lee did enter on the Clorox facility property when he approached the guard station and spoke with Alberto Burgos.

[14]Defendants reference the summary judgment order issued by the Honorable Lisa Godbey Wood, Chief Judge of the United States District Court, Southern District of Georgia, in the related case Plaintiff's filed against Clorox International Co.  Doc. 50-4.

*law only precludes such person from escaping, by that devise, vicarious responsibility for the proper performance of that nondelegable duty.*") (emphasis in original).

The Court is unable to uphold the Plaintiff's argument as it appears to be undisputed that Defendants do not own the Clorox plant and Defendants were independent contractors.[15]  The evidence also shows that the Clorox company has been granted summary judgment in its favor.  The evidence also shows that Mr. Lee was not murdered on the Clorox premises (the land in which would be the subject of an invitation of a landowner or occupier), but on a public street, for which Defendants did not control access.[16]

---

[15]  It is important to note that the Court recognizes that there are cases in which liability does not hinge on ownership, but finds that those cases are not determinative of the present issue.  See e.g., Regency Lake Apartments Associates, Ltd. v. French, 590 So.2d 970, 974 (Fla. Dist. Ct. App. 1991) ("In general, a cause of action for premises liability does not hinge on legal title or ownership, but rather on the failure of the party who is in *actual possession or control* to perform its legal duty. A party who exercises control or implied authority over a piece of property by inviting people to utilize the property in a particular manner may become responsible to invitees in the same manner as an owner.") (citations omitted, emphasis in original).  and Craig v. Gate Maritime Properties, Inc., 631 So.2d 375, 378 (Fla. Dist. Ct. App.1994) ("In addition, the fact that there may be joint responsibility or control over premises does not relieve a party from responsibility. A duty, and therefore liability for breach of that duty, may rest upon more than one party:  [A]nyone who assumes control over the premises in question, no matter under what guise, assumes also the duty to keep them in repair, and the fact that others are under a duty which they fail to perform is no defense to one who has assumed control, thereby bringing others within the sphere of danger.").

[16]  Cf. National Property Investors, II, Ltd. v. Attardo, 639 So.2d 691, 692 (Fla. Dist. Ct. App. 1994) ("But to suggest that Southland is liable because someone who happens to be on its property (even if he has not and did not intend to purchase anything) follows a patron down the street to an unlighted parking lot and there commits a crime is carrying landlord liability too far.").

In regard to the Plaintiff's duty to warn arguments, the case of <u>Lott v. Goodkind</u>, 867 So.2d 407 (Fla. Dist. Ct. App. 2003) provides guidance. In <u>Lott</u>, the Florida Court of Appeals stated:

> Generally, there is no duty to control the conduct of a third person to prevent him or her from causing physical harm to another. An exception arises where a special relationship exists between the actor and the third person. The special relationship, however, must include the right or the ability to control another's conduct. <u>Id</u>. at 408.

Here, there is no evidence to show a special relationship between the Defendants and Mr. Lee nor is there evidence of a special relationship between the Defendants and the unknown assailant. The Court also declines to create such a category of special relationship. There is also no evidence to show that the Defendants had the right or ability to control Mr. Lee's conduct and/or the conduct of the unknown assailant's conduct.

The Court finds that the Defendants have met their burden of showing an absence of a genuine dispute of material fact as to a duty to warn and that Plaintiff have not come forward with facts showing a genuine dispute remains for trial.[17]

_____

[17]The Court makes no ruling on the Defendants' arguments that it discharged its duty to warn by Mr. Burgos telling Mr. Lee to park under the bridge. Doc. 56 at p. 6.

Also, as indicated in footnote 1 of this order, the Court deems it proper to issue this summary judgment ruling prior to ruling on the Defendants' <u>Daubert</u> motion to exclude the testimony of Plaintiff's expert, Ralph Witherspoon. The Court recognizes that Plaintiff's expert states an opinion that the crime against Mr. Lee was "reasonably foreseeable" and that Defendants "failed to develop a strategy/policy to either

**(2) Proximate cause**

Defendants further argue that even if they were negligent (or breached a duty) to Mr. Lee, they cannot be held liable for his death because his death was caused by an independent, intervening and unforeseeable criminal act.

In light of the determinativeness of the above-stated legal duty analysis, the Court does not reach the Defendants' proximate cause arguments.

**(3) Plaintiff's four claims**

Defendants argue that each of Plaintiff's four claims (negligence/wrongful death and misrepresentation/fraud) fail. Defendants reiterate its foreseeabilty arguments set out above. The Court's analysis, above, controls to this regard.

Defendant further state that in regard to the misrepresentation/fraud count, there is no evidence that Defendants made or intended to make a false statement to Mr. Lee.

---

accommodate and protect those truckers (and their cargos), or, to warn the truckers of the foreseeable risks known to Huffmaster and Clorox." Doc. 20 at p. 3. The Court finds that such opinion does not preclude summary judgment as the duty foreseeability issues is a question of law for the Court to decide. See also Smith v. Florida Power and Light Co., 857 So.2d 224, 230 (Fla. Dist. Ct. App. 2003) ("The duty foreseeability issue is a legal question and thus is to be determined by the court....") and Demelus v. King Motor Co. of Fort Lauderdale, 24 So.3d 759, 761 (Fla. Dist. Ct. App. 2009) ("Moreover, the mere assertion by [plaintiff's] expert that [defendant] could have enacted more stringent security measures, regardless of their economic feasibility or practices of [others], does not create a material issue of fact to preclude summary judgment.") (emphasis omitted).

Plaintiff does not address the misrepresentation/fraud claim in her responsive pleading. The Court notes that in her Complaint, Plaintiff states that "Defendants claimed in an Executive Summary that they had performed a detailed survey of all unsafe conditions around Clorox's Tampa facility. Defendants did not perform that detailed survey, which caused the nature of the surrounding neighborhood to go unheeded." Doc. 1 at p. 15.

The record contains the affidavit of Wade Pinnell, Vice-President of Huffmaster Companies. In his affidavit, Mr. Pinnell avers that the Security Survey Summary incorrectly references findings from a 25-35 page "complete survey document." Doc. 1 at p. 21. "This 'complete survey' was never created and does not exist in any form." Id. at para. 5. Mr. Pinnell further avers that he originally intended to follow up the Security Survey Summary with the more complete 25-35 page document referred to in the Security Survey Summary; however, once he finished site visits and Security Survey Summaries for approximately seventeen Clorox facilities, many of which had already made the changes and recommendations described in the Security Survey Summary, there was a decision not to draft the 25-35 "complete survey document" described in the Security Survey Summary. Id. at para. 7.

Under Florida law, there are four elements to establish fraudulent

misrepresentation: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010). See also Essex Ins. Co., Inc. v. Universal Entertainment & Skating Center, Inc., 665 So.2d 360, 362 (Fla. Dist. Ct. App. 1995) ("The essential elements of fraud are: (a) a false representation of fact, known by the party making it to be false at the time it was made; (b) that the representation was made for the purpose of inducing another to act in reliance on it; (c) actual reliance on the representation; and (d) resulting damage to the plaintiff.").

As stated above, the Plaintiff did not address this argument in her responsive pleadings. Local Rule 7.1(B) provides that "[f]ailure to file a response shall indicate that there is no opposition to the motion."

In addition, the Court agrees that there is no evidence of a false statement by Defendants to Mr. Lee in the record and in the absence of evidence to support the first element of fraudulent misrepresentation and fraud (i.e., false statement), the Court finds that the Defendants have met their burden of showing an absence of evidence to support the Plaintiff/non-movant's case as to the first element of the torts of misrepresentation and fraud. More specifically, the Plaintiff has not presented

affirmative evidence to show that a genuine issue of material fact exists as to her misrepresentation/fraud claim. Cf. Putzer v. Homeridge Properties, 57 So.2d 848, 852 (Fla. 1952) ("'Fraud is personal to the one defrauded.'").

**III. Conclusion**

The Court finds that the Defendants have met there burden of showing that there is no genuine dispute as to any material fact as to the Plaintiff's Complaint, alleging negligence/wrongful death and misrepresentation/fraud. The Court finds that the Plaintiff has not met her burden of coming forward with specific facts showing a genuine dispute. Accordingly, the Defendants' Motion for Summary Judgment [Doc. 50] is hereby **GRANTED**.

**IT IS SO ORDERED**, this 13th day of June, 2011.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE