[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13159
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:10-cv-02150-SCJ

GLORIA LEE,
as Surviving Spouse of Roger Earl Lee,
Deceased,

Plaintiff-Appellant,

versus

HUFFMASTER CRISIS RESPONSE, LLC,
HUFFMASTER MANAGEMENT, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 11, 2012)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Gloria Lee appeals the grant of summary judgment in favor of Huffmaster Crisis Response, LLC and Huffmaster Management, Inc. (collectively "Huffmaster") in a wrongful death action she brought as the surviving spouse of Roger Earl Lee ("Mr. Lee").  No reversible error has been shown; we affirm.

Huffmaster was engaged as an independent contractor by The Clorox International Company ("Clorox") to provide security services at Clorox's Tampa facility.  Clorox's facility handles hazardous chemicals and has been designated a "Critical Infrastructure Site" by the Department of Homeland Security; it is considered a possible target for terrorism.

Clorox hired National Freight, Inc. to transport a load of bleach from Clorox's Houston facility to its Tampa facility.  National Freight, Inc. engaged Mr. Lee, who worked as an independent contractor, to accomplish the transport.

On 22 February 2008, Mr. Lee arrived at Clorox's Tampa facility just before 4:00 a.m.; his scheduled delivery time was 10:00 a.m.  The security guard, a Huffmaster employee, advised Mr. Lee that he could not enter the facility before its scheduled opening at 6:30 a.m.  Clorox's policy -- which Huffmaster was responsible for enforcing -- was to refuse entry onto Clorox's premises during

2

non-business hours to truckers and other non-employees. Mr. Lee was aware of Clorox's policy of denying middle-of-the-night admittance from a previous delivery he had made just two months earlier. The security guard advised that Mr. Lee could park under a nearby highway overpass until the facility opened. Mr. Lee told the security guard that he would prefer to park on the street outside of Clorox's property. The security guard offered no objection to Mr. Lee's choice to park on public property adjacent to Clorox's facility. At approximately 4:30 a.m., while Mr. Lee was asleep in his truck, an unknown assailant broke into the truck and fatally shot Mr. Lee.

Plaintiff filed this wrongful death action against Huffmaster; Plaintiff argued that under Florida law Huffmaster owed Mr. Lee a duty of reasonable care to prevent foreseeable harm from third-party misconduct and a duty to warn of known dangerous conditions in the area immediately outside Clorox's facility. Huffmaster countered that Plaintiff's negligence-based claims fail as a matter of law because no duty was owed Mr. Lee by Huffmaster, and Huffmaster did not proximately cause Mr. Lee's death.

Under Florida law, "[t]he general rule is that a party has no legal duty to prevent the misconduct of third persons.... Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third

party." K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So.2d 1114, 1117 (Fla. Dist. Ct. App. 2005) (internal quotations and citations omitted).  But exceptions to the general rule exist; Plaintiff argues a number of these exceptions operated to impose a duty on Huffmaster.

A duty may be imposed where the defendant's conduct creates a foreseeable zone of risk.  See McCain v. Fla. Power Corp., 593 So.2d 500, 503 (Fla. 1992) ("Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.").  Plaintiff argues that in the light of the high crime rate in the neighborhood surrounding Clorox's facility and the inadequacy of the lighting in that area, Huffmaster's refusal to allow truckers early entry into its facility created a foreseeable zone of risk.  But Huffmaster's denial of entry into Clorox's facility when that facility was closed did not create directly a foreseeable risk of harm.  As the district court noted  -- and Plaintiff does not allege to the contrary -- Huffmaster was not an active participant in the criminal act causing Lee's death; no evidence was proffered that the high crime rate near the Clorox plant was related to the delivery entrance policy; and no evidence suggested that Huffmaster controlled access to the public street where the crime occurred.

We can speculate that had Mr. Lee been allowed early entry into the facility his tragic death likely would have been avoided. But that does not mean Huffmaster's acts created or controlled the foreseeable risk. Clorox's entry policy as enforced by Huffmaster was known to Mr. Lee when he chose nevertheless to arrive at the facility hours before it opened knowing he would be denied entry. Huffmaster had no control over Mr. Lee's rejection of the security guard's suggestion that he park at a nearby highway overpass or over his decision to park on a public street adjacent to Clorox's facility. That the public premises where Mr. Lee parked were inadequately lighted represents no breach by Huffmaster. And Huffmaster had no control over the criminal who took Mr. Lee's life. In short, Huffmaster took no affirmative step nor failed to take a step that directly and necessarily created a risk of foreseeable harm. See Demelus v. King Motor Co. of Fort Lauderdale, 24 So.3d 759, 761 (Fla. Dist. Ct. App. 2009) ("To impose a duty, it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk before liability may be imposed"); Aquila v. Hilton, Inc., 878 So.2d 392, 396 (Fla. Dist. Ct. App. 2004).

The district court also took issue with Plaintiff on the foreseeability of the tragedy that befell Mr. Lee. Although it appears to be widely acknowledged that

5

the Clorox plant was in a high crime area, no truck driver had ever been assaulted, shot, robbed or harassed in the area around the facility.  Plaintiff failed to show that the negligent act of which Plaintiff complained had so frequently caused the same injury that the same result could be expected so as to support imposition of a legal duty.  See Palm Beach-Broward Medical Imaging Center, Inc. v. Continental Grain Co., 715 So.2d 343, 345 (Fla. Dist. Ct. App. 1998); see also Biglen v. Florida Power & Light Co., 910 So.2d 405, 408 (Fla. Dist. Ct. App. 2005 ("foreseeability [is] the polestar to finding both the existence of a legal duty and its scope.") .

Plaintiff also argues that a special relationship existed between Huffmaster and Mr. Lee  -- that of landowner or business-invitee -- that gave rise to a duty to prevent harm caused by third persons.  Florida has adopted the Restatement (Second) of Tort § 315 (1965) which states: "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm ... unless... a special relation exists between the actor and the other which gives to the other a right to protection."  See K.M. ex rel. D.M., 895 So.2d at1117.  But as the district court set out, if any special relationship could be found to exist, it was between Clorox and Mr. Lee not Huffmaster and Mr. Lee.  Although we accept that Florida law continues to evolve on the special relationships that might give rise to a duty,

6

see Janis v. Pratt & Whitney Canada, Inc., 370 F.Supp 2d 1226, 1230 (M.D. Fla. 2005), the record here fails as a matter or law to show a special relationship that supports imposition of a duty upon Huffmaster to prevent off-premises third-party harm to Mr. Lee.

Plaintiff also argues that a duty to protect arose from Huffmaster's actual or constructive control over the site where the tragedy occurred. Where the defendant controls the "(1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tortfeasor," Daly v. Denny's, Inc., 694 So.2d 775, 777 (Fla. Dist. Ct. App. 1997), Florida recognizes a duty to protect against third-party torts. Id. But Mr. Lee's murder occurred on public property; it did not occur on premises owned or controlled by Huffmaster. We agree with the district court that no evidence was proffered that Huffmaster had actual or constructive control over the public street where the tragedy occurred.

Plaintiff's last argument is that Huffmaster's superior knowledge about crime rates in the area surrounding Clorox's facility created a duty to warn Mr. Lee about the danger to which he exposed himself. Again, however, the absence of a special relationship between Huffmaster and Mr. Lee is fatal to Plaintiff's claim. We are cited to no Florida case where a duty to warn was recognized but no special relationship existed to give rise to that duty. And so Plaintiff's reliance

on <u>Shurben v. Dollar Rent-A-Car</u>, 676 So.2d 467 (Fla. Dist. Ct. App. 1996), where a customer-rental agency relationship existed, is misplaced.  <u>See</u> <u>T.W. v. Regal Trace, Ltd.</u>, 908 So.2d 499, 504 (Fla. Dist. Ct. App. 2005) (if no special relationship is shown, no duty to warn arises; general rule of no liability for third-party criminal acts applies unless another exception to the general rule may be invoked).

    AFFIRMED.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 11, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 11-13159-CC
Case Style: Gloria Lee v. Huffmaster Crisis Response, LL, et al
District Court Docket No: 1:10-cv-02150-SCJ

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, CC at (404) 335-6177.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs